JS - 6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP M. CHARPENTIER, individually, and on behalf of other similarly situated,<br><br>     Plaintiff(s),<br><br>     v.<br><br>FRITO LAY, INC. and DOES 1 through 10, inclusive,<br><br>     Defendant(s). | CASE NO. SA CV 06-1215 DOC (Anx)<br><br>**O R D E R GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS** |

Before the Court is Plaintiff Phillip M. Charpentier's Motion for Final Approval of Settlement and Award of Attorney's Fees and Costs ("Motion"). After considering the Plaintiffs' filings, and for the reasons below, the Court hereby GRANTS Plaintiffs's Motion.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff Phillip Charpentier ("Plaintiff") filed this putative class action, alleging that Defendant Frito-Lay, Inc. ("Frito-Lay") improperly classified Plaintiff, and the putative class of

1 Route Sales Representatives ("RSRs") he seeks to represent, as exempt from California and
2 federal overtime laws and meal and rest period requirements under California law.  Plaintiff
3 further alleged that Frito-Lay failed to pay Plaintiff and other RSRs for their overtime or provide
4 them meal and rest breaks.  Frito-Lay removed the action to this Court on December 15, 2006.

On April 27, 2007, the Court denied Frito-Lay's motion for summary adjudication under Federal Rule of Civil Procedure 56(f) to give the parties time to conduct discovery.  The Court declined to define the word "provide," used in Sections 226.7 and 512 of the California Labor Code, in the abstract without the benefit of the relevant facts.

The parties then exchanged written discovery requests, produced hundreds of documents, interviewed potential witnesses, held numerous meetings and conferences with party representatives, took depositions, investigated applicable law, and mediated the case before retired Judge Edward A. Infante.  On June 29, 2007 the parties reached the settlement now before the Court.

**B.     Settlement**

The Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement"), provides that Frito-Lay will pay $1,500,000 to a Settlement Fund to be distributed as follows: (1) $1,027,500 for payments to the Settlement Class Members (the "Gross Settlement Amounts"); (2) costs of claims administration up to $77,500; (3) class counsel's attorneys' fees and costs of up to $375,000; and (4) a class representative enhancement for Charpentier of up to $20,000.  "Plaintiffs" are defined as all current and former Frito-Lay RSR employees employed in California at any time from November 3, 2002 through ten days (10) after preliminary approval of the settlement.  "Class Members" are all Plaintiffs who do not properly exclude themselves from the settlement.  "Settlement Class Members" are all Class Members who submit a Claim Form/FLSA Consent Form that is approved for payment under the Settlement Agreement.  Frito-Lay has identified 4,454 potential Class Members using contact information from its personnel records.

The Gross Settlement Amounts will be allocated among the Settlement Class Members, i.e. class members who timely complete and return a claim form, based upon the number of

weeks each class member worked during the class period for an estimated payment of $3.37 per work week. Potential Class Members were given a chance to opt out or object to the settlement by submitting a written request for exclusion within forty-five days after the notice was mailed.

Notices were initially mailed to 4,405 potential Class Member, and as of May 30, 2008, 2,150 Claim Forms and 15 Opt-Out Requests were returned. The 2,150 participating Settlement Class Members account for 63.29 percent of the total weeks worked by all Plaintiffs. To the extent that Class Members do not submit claim forms for their provisional share of the fund, the unclaimed share shall be redistributed to the class members who make timely claims on a proportional basis.

In return for the $1.5 million settlement, Class Members agree to release Frito-Lay from: (1) all state law claims that Frito-Lay failed to provide meal period and rest breaks or failed to properly pay for overtime hours; (2) all damages for failure to comply with state wage and hour laws, including the Private Attorneys General Act, Labor Code Section 2699 *et seq.*; and (3) all claims related to unlawful, unfair, or fraudulent business practices under California Business and Professions Code Section 17200, *et seq.* Moreover, Settlement Class Members, consisting of those who submit a Claim Form/FLSA Consent Form, additionally agree to release Frito-Lay from all federal claims relating to overtime and wage and hour laws.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires the Court to approve a class action settlement and requires notice of settlement to all class members. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The first step is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)).

Second, district courts must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable," and, in doing so, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.* (internal quotation marks and

citations omitted). To determine if a settlement is fair, some or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Staton*, 327 F.3d at 959.

However, where a class settlement has been reach "after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *see also* Manual for Complex Litigation, 2d § 30.45 (1993). Judicial policy favors settlement in class action and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Pacific Enterprises Securities Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

## III. DISCUSSION

### A. Class Certification for Purposes of Settlement

A class may be certified for the purposes of settlement where a settlement is reached before a litigated determination of class certification. *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-78 (5th Cir. 1979). The Court must base its decision to certify the class on the factors identified in Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality and adequacy.

*Numerosity*. Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties identified at least 4,454 current and former employees eligible as Class Members. Notices were mailed to those 4,454 individuals and 2,150 submitted claim forms. Courts have previously held that joinder is impracticable where there are more than 35 potential plaintiffs. *See e.g. Gay v. Waiters & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1997) (110 potential class members); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) (100-150 members). Accordingly, 4,454 is sufficient to satisfy the numerosity requirement.

*Commonality*. Commonality exists where "there are questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, there must be "shared legal issues" or "a common core of salient facts." *Stanton*, 327 F.3d at 953. Here, the same legal issues are relevant to claims of all Plaintiffs, such as: (1) whether the RSRs classified as exempt are entitled to wages for overtime and missed meal periods under California law; and (2) whether Frito Lay's business practices were unlawful, unfair, or fraudulent. Additionally, each of the Plaintiff's claims arises from the same circumstances: employees in California from November 3, 2002 to October 25, 2007 prevented from taking appropriate breaks or receiving overtime pay.

*Typicality*. Typicality exists where "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, the representative is a member of the group of employees denied breaks and overtime pay. Thus, his claims and the defenses against him will be typical of all class members.

*Adequacy*. Adequacy of representation exists where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Satisfying this factor "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386 (9th Cir. 1992). Counsel is competent and experienced, and the settlement was the product of arms-length negotiations. The representative has received no different treatment than the class members except that he will receive a $20,000 enhancement.

Certification of a class is appropriate where "questions of law or fact common to the members of the class predominate over any question affecting only individual members" and a class action is superior to other available methods for the fair and efficient adjudication of the case. Fed. R. Civ. P. 23(b)(3); *accord Amchem Prod., Inc. v. Windsor*, 5274 U.S. 591, 619, 117 S. Ct. 2231, 2196 (1997). Courts commonly certify class actions pertaining to wage and hour issues. *See, e.g., Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1059 (C.D. Cal. 2006). Here, common questions predominate over individual questions and a class action is the

5

superior method of resolving the dispute. The potential recovery of each individual Plaintiff would not justify the litigation expense and risk of inconsistent judgments. Accordingly, this Court concludes that the Plaintiff and putative Class Members meet the requirements for certification under Federal Rule of Civil Procedure 23.

### B.     Approval of Settlement

The Court should base its approval of the settlement on the following factors: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959.

Regarding the *strength of Plaintiffs' case*, the Court must "determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case." *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995). The present case falls somewhere between the two extremes; so this factor is not an obstacle to approval. Both sides participated in extensive and costly investigation and discovery and are well aware of the strengths and weaknesses of their respective case in the absence of settlement.

The *risk, expense, complexity, and duration* of further litigation will likely be considerable given a favorable ruling for Frito-Lay in a prior case concerning its overtime structure. In that case, the Northern District of California ruled that Frito-Lay's variable rate overtime structure complied with all state and federal overtime laws and has retained jurisdiction to administer a settlement concerning similar issues. Because overcoming the Northern District's ruling is uncertain, Class Members have obtained a substantial benefit by securing the Settlement. Additionally, the claims involve unsettled legal issues that present substantial uncertainty to both parties. For example, it is unclear whether the Motor Carrier Exception, exempting workers who drive vehicles over 10,000 pounds in interstate commerce from overtime, is applicable to this case. *See Billings v. Rolling Frito-Lay Sales*, 413 F. Supp. 2d 817, 819-20 (S.D. Tex. 2006). Moreover, the contentious dispute over Frito-Lay's requirement either

to "provide" or to "ensure" lunch breaks will likely lead to expensive motion work and additional discovery.

The *amount of the settlement*, $1.5 million, is likely less than Plaintiffs would seek through litigation.  However, the settlement bears hallmarks of fairness.  It was negotiated by experienced counsel and generally seems adequate.  *See In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) ("Counsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions.").

The attorneys' fee component is 25% of the total settlement – the benchmark for fees in class action cases.  *See Torisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The Class Representative will also be compensated a reasonable amount for his efforts on behalf of the class.  Charpentier has actively participated in the action by assisting counsel and responding to discovery; he has undertaken the risk of serious litigation and absent his participation, the estimated $1.5 million Settlement would likely not have been possible.  In view of Charpentier's efforts on behalf of the Class, this Court believes the $20,000 incentive, constituting less than one percent of the Settlement Agreement, to be appropriate.  *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.").

Additionally, the fund will be distributed based on the number of weeks worked by each class member, which appears to be a fair method of distributing the fund.

Since inception, *discovery and investigation* in this case has been contentious.  The parties have exchanged numerous discovery requests and reviewed hundreds of documents.  Depositions have been taken of both Charpentier and Frito-Lay's corporate designee, and Plaintiffs' counsel has interviewed witnesses of Frito-Lay's alleged overtime and rest break violations.  Thus, there has been sufficient discovery for the settlement to be deemed fair.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Concerning the *experience of counsel and the reaction of class members*, class counsel is

1  experienced and competent and there have been no objections to the settlement filed with the
2  Court. After this Court's October 15, 2007 preliminary approval of the settlement, notices were
3  mailed to 4,408 Plaintiffs, only 15 of which opted-out as Settlement Class Members. As of May
4  30, 2008, 2,150 Class Members assented to the Settlement Agreement, representing 63.29
5  percent of the Class workweeks. Moreover, no class members appeared to contest the settlement
6  at a June 9, 2008 hearing.

7  Accordingly, this court find that the Settlement Agreement is fair, adequate, and
8  reasonable.

9  **IV.   DISPOSITION**

10  For the reasons set forth above, the court (1) approves certification of the Class for
11  purposes of settlement; (2) approves the Settlement Agreement; (3) approves the enhanced
12  payment of $20,000 to Named Plaintiff Phillip M. Charpentier; (4) approves the $375,000 award
13  of attorneys' fees; (5) enters final judgment in this action; and (6) approves the payment of the
14  Gross Settlement Amounts to Class Members who submitted a timely and properly completed
15  Claim Form.

17  IT IS SO ORDERED.
18  DATED: June 17, 2008

_____
DAVID O. CARTER
United States District Judge